**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CASSIE PETERS,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **STARBUCKS CORPORATION,** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Cassie Peters (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Starbucks Corporation (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), and Section 1981 of the Civil Rights Act ("Section 1981"). In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Bushkill, PA.
3. Upon information and belief, Defendant Starbucks Corporation is a coffee shop chain with a location at 115 Brown Street, East Stroudsburg, PA 18301 and with a corporate headquarters located at 2401 Utah Avenue South, Seattle, WA 98134.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII and the PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on June 27, 2026, alleging race discrimination as well as retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2026-02865 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated July 10, 2026.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

**MATERIAL FACTS**

**PLAINTIFF'S EMPLOYMENT HISTORY**

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is African American.
21. On or about September 21, 2009, Defendant hired Plaintiff in the position of Barista.
22. Plaintiff was well qualified for her position and performed well.
23. In or around 2014, Defendant promoted Plaintiff to the position of Supervisor.
24. Plaintiff was well qualified for her position and performed well.
25. Plaintiff strictly followed and enforced Defendant's policies and procedures.
26. As a result, Plaintiff was commonly referred to as a "drill sergeant" by her coworkers and subordinates.
27. Importantly, Plaintiff was the only African American employee at her location.
28. In addition, upper management was entirely Caucasian.

**A CAUCASIAN SUPERVISOR MADE UNFOUNDED COMPLAINTS AGAINST PLAINTIFF**

29. In or around early 2025, Erin Ryan (Caucasian), Supervisor, made complaints to Shane Franklin (Caucasian), District Manager, and Toni Soto (Hispanic), Store Manager, about Plaintiff allegedly being too aggressive as Plaintiff would make notes of incomplete tasks from Ryan's shift that Plaintiff discovered when she began her shift.
30. Franklin and Soto investigated Ryan's complaints, but determined that they were unfounded and dismissed them.
31. Soto later informed Plaintiff, in or around May 2025, that she believed that Plaintiff was being targeted in regard to Ryan's complaints.

**RYAN MADE ADDITIONAL COMPLAINTS AGAINST PLAINTIFF TO THE NEW DISTRICT MANAGER**

32. Shortly afterwards, in or around early 2025, Franklin left the District Manager position and Krista Dilworth assumed the District Manager position.

33. In or around June 2025, Ryan made the same complaints against Plaintiff directly to Dilworth, bypassing Soto.

**DILWORTH ISSUED PLAINTIFF AN UNWARRANTED WRITTEN DISCIPLINE**

34. In or around June 2025, Dilworth issued Plaintiff a written final warning based on the false allegation that Plaintiff made an inappropriate comment to a male coworker, Lucas Scro (Caucasian), Barista, who asked to use the restroom.
35. Plaintiff denied making the comment.
36. In addition, Scro denied that Plaintiff made the comment to him.
37. The allegation allegedly came only from other unidentified coworkers, who claimed to have overheard the comment.
38. Despite the denials of both individuals involved, Dilworth disciplined Plaintiff.
39. Additionally, during the discipline meeting, Dilworth brought up Ryan's complaint of Plaintiff allegedly being aggressive.
40. The June 2025 final written warning was the only written discipline Defendant issued to Plaintiff in more than sixteen (16) years of employment.

**A NEW STORE MANAGER STARTED AND INFORMED PLAINTIFF THAT DILWORTH HAD INSTRUCTED HIM TO WATCH PLAINTIFF**

41. In or around August 2025, Nicholas Misti (Caucasian) became the Store Manager.
42. Shortly afterwards, Misti informed Plaintiff that Dilworth had instructed him to keep an eye on Plaintiff.

**MISTI REPEATEDLY REPRIMANDED PLAINTIFF**

43. Thereafter, Misti repeatedly pulled Plaintiff aside and called Plaintiff into the office to discuss alleged complaints made against Plaintiff.

44. For the majority of these occasions, Misti did not ask Plaintiff for her side of the story, and instead, reprimanded Plaintiff.

**PLAINTIFF COMPLAINED TO MISTI ABOUT THE DISPARATE TREATMENT TO WHICH SHE WAS SUBJECTED**

45. On September 3, 2025, Misti held a door open for Plaintiff, and Plaintiff said, "thanks young man."

46. Misti told Plaintiff that Dilworth had already asked Misti to be on the lookout for that kind of language.

47. Later that same shift, Plaintiff went to Misti's office and complained that Plaintiff felt singled out and targeted.

48. Plaintiff complained to Misti that he had been specifically told to watch what Plaintiff did and said, while other employees violated Defendant's dress code and policies without being coached or addressed.

49. This effectively was a complaint of discrimination and/or disparate treatment on the basis of race.

50. That same day, Plaintiff reported numerous dress code violations by other employees regarding improper pants, leggings, missing socks, missing shoelaces and multiple facial piercings to Misti.

51. Plaintiff informed Misti that these dress code violations were currently occurring with the on shift staff.

52. Misti responded that he had not noticed any of the aforementioned dress code violations.

53. Misti did not coach or discipline any of the employees identified by Plaintiff.

**PLAINTIFF REPORTED A CAUCASIAN BARISTA STEALING TIME, BUT MISTI REFUSED TO ADDRESS IT**

54. On October 9, 2025, Plaintiff reported to Misti that she had witnessed Valentina Restrepo (Caucasian), Barista, stealing time, and that it was not the first occurrence.
55. However, Misti merely responded, "okay", and did not take action to address Restrepo's time theft.

**MISTI THREATENED PLAINTFF'S EMPLOYMENT**

56. Later that day, Misti called Plaintiff into a meeting regarding a complaint that Bri Cotto (Caucasian), Barista, made to Misti regarding how Plaintiff had spoken to her.
57. Cotto's complaint arose from an incident in which five cars were waiting at the drive-thru, and Plaintiff, as the Supervisor managing the floor, moved Cotto from the drive-thru window to another station to relieve pressure on Cotto as a new employee in training.
58. Plaintiff did not speak to Cotto in a harsh, aggressive, or inappropriate manner.
59. Misti did not ask for Plaintiff's side of events before addressing Cotto's complaint.
60. Misti told Plaintiff that Dilworth had already spoken to Plaintiff about this, and that if it continued, "it wouldn't end well for [Plaintiff]", or words to that effect.
61. Misti addressed Cotto's complaint against Plaintiff immediately but did not address Plaintiff's report of time theft.

**PLAINTIFF EMAILED A WRITTEN COMPLAINT TO MISTI REGARDING THE RACE DISCRIMINATION SHE WAS SUBJECTED TO**

62. On October 10, 2025, Plaintiff emailed Misti a written complaint regarding how she was being singled out and targeted.
63. In the email, Plaintiff complained of "double standards" in how management treated her compared with her coworkers, that she felt a "sense of victimization and discrimination",

that she was not being treated with the same level of respect and trust as other employees and complained that Misti had threatened her employment without hearing Plaintiff's side of the story.

64. Upon information and belief, Defendant did not investigate Plaintiff's complaint.

**<u>PLAINTIFF REPORTED RYAN LEAVING MONEY UNSECURED AT DEFENDANT, BUT MISTI REFUSED TO ADDRESS IT</u>**

65. On or about September 29, 2025 and on or about October 8, 2025, Ryan left money unsecured at the store.

66. Plaintiff reported the unsecured money in her notes when she began her shift.

67. In or around mid-October 2025, at a staff meeting, Misti asked if any employees had any questions or concerns.

68. Plaintiff asked Misti to address the money problem in reference to Ryan leaving money unsecured at the store.

69. Misti responded, "we don't have money problems," or words to that effect.

70. Upon information and belief, Defendant did not discipline Ryan for leaving money unsecured.

**<u>DEFENDANT MADE A SIGNIFICANT ERROR ON PLAINTIFF'S PAYROLL</u>**

71. From in or around the end of October 2025 to in or around early November 2025, Plaintiff took a two (2) week vacation.

72. However, after her vacation, she discovered that Defendant made a significant payroll error in which her pay was reduced by approximately $800.

73. Plaintiff called Rebecca Spitz (Caucasian), Assistant Store Manager, and complained about the payroll error.

74. Spitz informed Plaintiff that she had caught the payroll error and had informed Dilworth about it.

75. However, Plaintiff's payroll error was not rectified until after Plaintiff complained to Spitz about it.

**DEFENDANT DID NOT DISCIPLINE A CAUCASIAN BARISTA COMMITTING TWO (2) NO CALL-NO SHOWS**

76. On or about November 27, 2025, and on or about December 21, 2025, Anessa Treulieb (Caucasian), Barista, committed no call-no shows.

77. However, Defendant did not discipline Treulieb for her no call-no shows and instead allowed her to use paid time off ("PTO") for both absences.

**PLAINTIFF REPORTED RESTREPO STEALING TIME AND VIOLATING THE DRESS CODE POLICY, BUT DEFENDANT DID NOT DISCIPLINE RESTREPO**

78. On or about December 28, 2025, Restrepo arrived at the store on time but went to the back area and did not return to the work area until 4:31 a.m.

79. Restrepo then wrote a start time in the punch communication log book.

80. Plaintiff reported Restrepo's conduct to management that same day.

81. Defendant did not discipline Restrepo.

82. Restrepo also violated Defendant's dress code by wearing two facial piercings.

83. Plaintiff coached Restrepo about the piercings several times.

84. When Plaintiff was not working, Restrepo wore both facial piercings without being coached by management.

**DEFENDANT REFUSED TO ADDRESS A SUPERVISOR TELLING EMPLOYEES IT WAS ACCEPTABLE TO FALSIFY THEIR TIME CARDS**

85. Ariana Hernandez (Hispanic), Supervisor, witnessed another supervisor coaching employees that it was acceptable to falsify their arrival times in the punch communication log book when they arrived late.

86. Plaintiff reported this conduct to management.

87. Upon information and belief, Defendant did not discipline any employee involved.

**DEFENDANT REDUCED PLAINTIFF'S HOURS**

88. In or around mid-December 2025, Defendant began cutting Plaintiff's hours.

89. No reason was provided for the reduction in hours.

90. As a result, Plaintiff was forced to constantly review the schedule to see when she could cover shifts in order to work as close as possible to 40 hours per week.

**PLAINTIFF REPORTED RYAN LEAVING THE STORE'S DRIVE-THRU WINDOW UNLOCKED, BUT DEFENDANT DID NOT DISCIPLINE RYAN**

91. On or about December 14, 2025, Ryan left the store's drive-thru window unlocked upon closing.

92. As a result, police conducted welfare checks at the store on two (2) separate occasions.

93. On or about December 23, 2025, Ryan left the store's front door unlocked during opening procedures.

94. As a result, customers entered the store before business hours.

95. On or about December 26, 2025, Plaintiff sent Spitz a text message reporting both incidents.

96. In the text message, Plaintiff stated that she feared for her safety and that safety and security protocols needed to be followed to keep the entire staff safe.

97. Spitz responded that she would "definitely take care of this."

98. Upon information and belief, Defendant did not discipline Ryan.

99. On or about January 4, 2026, Ryan again failed to secure the Store upon closing, leaving the drive-thru window unlocked.

100. Plaintiff reported this incident to Spitz in person.

101. However, Spitz did not discipline Ryan for this incident.

**HERNANDEZ INFORMED PLAINTIFF THAT DEFENDANT HAD REMOVED HER FROM THE SCHEDULE**

102. On or about January 1, 2026, Hernandez asked Plaintiff whether Plaintiff would be on vacation the week of January 19, 2026.

103. Plaintiff had not requested vacation for that week.

104. Plaintiff then learned that Defendant had removed Plaintiff from the schedule beginning January 19, 2026.

105. Defendant removed Plaintiff from the schedule before Defendant notified Plaintiff of any complaints against Plaintiff or any investigation.

**PLAINTIFF WAS CALLED INTO THE OFFICE FOR COMPLAINTS MADE AGAINST HER**

106. On or about January 5, 2026, Sarah McGee (Caucasian), District Manager, and Spitz called Plaintiff into the office and told Plaintiff that complaints had been made against Plaintiff.

107. During the meeting, Plaintiff complained to McGee and Spitz that she had submitted multiple complaints to management and that nothing had been done.

108. During the meeting, Plaintiff acknowledged that, on one occasion, Plaintiff had slammed an ice tray down out of frustration.

**PLAINTIFF EMAILED A COMPLAINT TO MCGEE**

109. On or about January 6, 2026, Plaintiff emailed McGee a written complaint.

110. In the email, Plaintiff detailed the policy violations by other employees that Plaintiff had reported and that management had failed to address.

111. In the email, Plaintiff stated that there appeared to be a plan to separate Plaintiff from Plaintiff's position, as Plaintiff had already been removed from the schedule.

**DEFENDANT TERMINATED PLAINTIFF**

112. On or about January 8, 2026, Misti and Spitz called Plaintiff into the office and terminated her employment.

113. Defendant claimed that because Plaintiff admitted to slamming the ice tray, the conduct constituted workplace violence.

114. However, Hernandez engaged in the same conduct with an ice bin, but was not disciplined or terminated.

115. Defendant terminated Plaintiff two (2) days after she complained that management failed to act on Plaintiff's complaints.

116. Defendant's stated reason for terminating Plaintiff is pretext.

117. Defendant discriminated against Plaintiff due to her race and retaliated against her for reporting race discrimination in violation of Title VII, the PHRA, and Section 1981.

118. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – RACE DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

119. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

120. Plaintiff is a member of protected class in that she is African American.

121. Plaintiff was qualified to perform the job for which she was hired.

122. Plaintiff suffered adverse job actions, including, but not limited to termination.

123. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

124. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

125. Defendant discriminated against Plaintiff on the basis of her protected class.

126. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

127. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

128. Defendant's conduct was willful or performed with reckless disregard to her federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT II – DISCRIMINATION BASED ON RACE**
**PENNSYLVANIA HUMAN RELATIONS ACT**

129. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

130. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her protected class (African American).

131. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RACE DISCRIMINATION
## SECTION 1981 OF THE CIVIL RIGHTS ACT

132. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

133. Plaintiff is a member of protected class in that she is African American.

134. Plaintiff was qualified to perform the job for which she was hired.

135. Plaintiff suffered adverse job actions, including, but not limited to termination.

136. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

137. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

138. Defendant discriminated against Plaintiff on the basis of her protected class.

139. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

140. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

141. Defendant's conduct was willful or performed with reckless disregard to her federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

142. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

143. Plaintiff engaged in activity protected by Title VII.

144. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

145. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT V – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

146. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

147. Plaintiff engaged in activity protected by the PHRA.

148. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

149. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – RETALIATION
## SECTION 1981 OF THE CIVIL RIGHTS ACT

150. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

151. Plaintiff engaged in activity protected by Section 1981.

152. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

153. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Cassie Peters, requests that the Court grant her the following relief against Defendant:

(a) Damages for past and future wage loss;

(b) Compensatory damages for economic and non-economic harm including, *inter alia*, mental anguish and/or emotional distress;

(c) Punitive damages;

(d) Reasonable attorneys' fees;

(e) Recoverable costs;

(f) Pre and post judgment interest;

(g) An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(h) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(i) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

**CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: October 8, 2026

**By:** ***/s/David M. Koller***

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*